# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| CLARENCE STUFFLEBEAN, JR., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 2:15-CV-04262-DGK-SSA |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

**ORDER REMANDING CASE TO COMMISSIONER FOR FURTHER PROCEEDINGS**

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Clarence Stuffelbean Jr.'s ("Plaintiff") application for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments, including a history of strokes with mild residual left-sided weakness, cognitive disorder, and depression, but retained the residual functional capacity ("RFC") to work as an electronic components bonder, patcher, and woodworking inspector.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's decision does not give good reasons for discounting the neuropsychologist's opinion. Because this deficiency is outcome determinative, the Court REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

It appears to the Court Plaintiff filed his application for disability insurance benefits on January 3, 2013,[1] alleging a disability onset date of November 8, 2012.

The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on April 18, 2014, issued her decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on September 23, 2015, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

**Standard of Review**

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Substantial evidence is less than a preponderance, but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

---

[1] The Court notes there are a variety of opinions concerning when Plaintiff filed his application. Plaintiff contends he applied on January 4, 2013, the date the Commission mailed him a copy of a form he completed on January 3. R. at 132. The ALJ found Plaintiff protectively filed for benefits on December 13, 2012. R. at 12, 163. Defendant contends he filed on March 19, 2013. The Court does not know how Defendant calculated this date.

**Discussion**

The Commissioner follows a five-step sequential evaluation process[2] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Plaintiff argues the ALJ erred at step four because she: (1) improperly discounted the opinion of a neuropsychologist; and (2) improperly discounted Plaintiff's credibility.

**I.     The ALJ did not give good reasons for discounting the neuropsychologist's opinion.**

The parties agree Plaintiff had a series of minor strokes in the fall of 2012 leaving him with weakness on the left side of his body and some cognitive impairments. The issue in this case concerns the extent of these cognitive impairments and their impact on his RFC.

Roughly a year after suffering these strokes, Plaintiff's treating doctor referred him to a neuropsychologist, Dr. Kim Dionysus, Psy. D. ("Dr. Dionysus"), for a psychological examination. R. at 442. Dr. Dionysus conducted extensive psychological and cognitive testing of Plaintiff over two days in December of 2013. R. at 441-42. She then wrote a nine-page report explaining the test results and her conclusions. R.at 441-49.

Dr. Dionysus noted that even before the strokes Plaintiff's neuropsychological functioning was in the borderline range, with a full-scale IQ of 72. R. at 445. She opined that any test results which now fell below the borderline range were attributable to his strokes. R. at

---

[2] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

445.  Relevant to this case, she found Plaintiff's working memory was below borderline, in the "extremely low" range, ranking in the bottom 1% of the population.  R. at 446.  She concluded the strokes had left him with "residual cognitive deficits" and, as part of her diagnosis and assessment, opined "[c]ognitive and psychological factors work to *diminish his ability to maintain a consistent occupational status*."    R. at 446 (emphasis added).

Two months later Dr. Dionysus completed a Medical Source Statement – Mental ("MSS-M") for Plaintiff.   Unlike many medical source statements this Court has seen, this MSS-M was not a transparent attempt to procure benefits for a patient by describing the subject as "markedly" or "extremely" limited in almost every area of functioning.  On the contrary, Dr. Dionysus's opinions appeared to be reasonable and consistent with the results of her earlier objective testing.  Dr. Dionysus found Plaintiff was "mildly limited" in half of the twenty categories of functioning, "moderately limited"[3] in five, "markedly limited"[4] in four, and not "extremely limited"[5] in any category.  R. at 475-76.

Dr. Dionysus found Plaintiff was "markedly" limited in his ability to: (1) understand and remember detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (4) complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  R. at 475-76.  Dr. Dionysus also indicated that

---

[3] The MSS-M defined "moderately limited" as impairment levels compatible with some, but not all, useful functioning, considered to be one standard deviation below the norm, or a 30% overall reduction in performance.  R. at 475.

[4] The MSS-M defined "markedly limited" as seriously interfering with his ability to function independently, two standard deviations below the norm or a 60% overall reduction in performance.  R. at 475.

[5] The MSS-M defined "extremely limited" as precluding useful functioning in this category, three standard deviations below the norm, or a 90% overall reduction in performance.  R. at 475.

4

Plaintiff would have "bad days causing need to leave work prematurely or be absent"; that he would miss approximately four days per month; and that his symptoms would interfere with his ability to perform even simple tasks. R. at 475.

The ALJ gave "some weight" to Dr. Dionysus's opinion, finding it "generally consistent with an ability to perform simple, unskilled work, which is consistent with her own testing and that of Dr. Doyle." R. at 20. But the ALJ gave "no weight" to Dr. Dionysus's finding that Plaintiff would miss four days of work per month due to psychological symptoms, claiming Dr. Dionysus provided "no explanation for this conclusion, and there is nothing in the record to suggest that the claimant would experience this level of absenteeism." R. at 20. The ALJ did not discuss or acknowledge Dr. Dionysus's findings identifying four areas of functioning in which Plaintiff was markedly limited, or Dr. Dionysus's earlier objective testing, both of which arguably support the conclusion that Plaintiff would miss four days of work a month.

It is well established that if an ALJ discounts a treating physician's opinion, she must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002). Here, the ALJ has not given good reasons for doing so because she did not discuss important parts of Dr. Dionysus's MSS-M which are inconsistent with her decision to give no weight to Dr. Dionysus's opinions about Plaintiff's expected absenteeism. If accepted by the ALJ, this opinion might result in a revised RFC determination that would result in Plaintiff being found disabled.[6] This deficiency is not a mere deficiency in opinion-writing technique, it is outcome determinative, and so this case must be remanded for further proceedings.

---

[6] The Court also notes Plaintiff raises fair questions about other aspects of the ALJ's decision, such as whether it relied too much on Dr. Doyle and Dr. Bustin's opinions, or whether in assessing Plaintiff's credibility the ALJ gave sufficient credit to his work history.

5

**II.     The Court cannot determine whether the ALJ properly analyzed Plaintiff's credibility.**

Plaintiff also contends the ALJ erred in analyzing his credibility.  Because the ALJ's analysis of Plaintiff's credibility is based in part on her analysis of Dr. Dionysus's credibility, which is unclear, the Court cannot address this issue.

**Conclusion**

For the reasons discussed above, the Court REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Date:    March 28, 2017                              /s/ Greg Kays
                                                                    GREG KAYS, CHIEF JUDGE
                                                                    UNITED STATES DISTRICT COURT